THE HONORABLE RICARDO MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHARYN KALMBACH, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA, a New York Corporation, and INFOCISION, INC. d/b/a InfoCision Management Corporation, a Delaware Corporation,<br><br>  Defendants. | Case No. 2:17-cv-00399-JPD<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**DATE NOTED:  JUNE 9, 2017**<br>**ORAL ARGUMENT REQUESTED** |

# INTRODUCTION

The Court should dismiss Plaintiff Katharyn Kalmbach's four putative class claims against Defendants InfoCision, Inc. and National Rifle Association of America (the "NRA"), all arising out of an unspecified number of calls she received from InfoCision in 2016. Kalmbach fails to state a claim that the Defendants: (i) violated the Washington Automatic Dialing and Announcing Device Statute (WADAD), R.C.W. § 80.36.400; (ii) violated the Washington Do Not Call Statute (WDNC), R.C.W. § 80.36.390; (iii) violated the Washington Consumer Protection Act (WCPA), R.C.W. § 19.86, *et seq.*; and (iv) invaded Kalmbach's (and the class members') privacy under Washington common law.

Kalmbach's claims fail for several independent reasons. Kalmbach's WADAD claim—enforceable only through the WCPA—fails because: (1) her alleged harms are untethered to her alleged statutory violation; (2) she does not adequately allege that InfoCision used an automatic dialing and announcing device to call her; and (3) she does not allege a "commercial solicitation," which is required to establish a WADAD violation. Kalmbach's WDNC claim fails because she does not allege that she engaged in a conversation, as that statute requires. And her invasion-of-privacy claim fails because she alleges no highly offensive conduct, and at any rate, she alleges that calls to her were placed accidentally, not intentionally. Finally, Kalmbach has not alleged facts sufficient to hold one of the Defendants—the NRA—liable because she offers no facts supporting an agency relationship. Thus, the Court should dismiss Kalmbach's Complaint in its entirety.

## PLAINTIFF'S FACTUAL ALLEGATIONS[1]

InfoCision is a private teleservices company that provides inbound and outbound call-center services, direct mail, and other direct-marketing solutions to corporations and nonprofit organizations. (Compl. ¶ 2.) The NRA is a nonprofit membership organization that provides

---

[1] Although the Court is required treat Kalmbach's allegations as true for purposes of this motion, Defendants do not concede that those allegations are true for any other purpose.

DEFENDANTS' MOTION TO DISMISS - 1-      BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

firearms education, training, and advocacy to the public.  (*Id.* ¶¶ 1, 12.)[2]  The NRA hires InfoCision to make calls to recruit members and to solicit donations that help fund the NRA's education and advocacy programs.  (*Id.* ¶¶ 28, 30.)  To thank members for their contributions, the NRA offers certain benefits to its members—for example, a free duffel bag, a free magazine subscription, and firearms insurance.  (*Id.* ¶¶ 32–33.)

Kalmbach claims that in July 2016, InfoCision began making "daily unsolicited pre-recorded calls [to] her landline telephone" recruiting her to support the NRA.  (*Id.* ¶¶ 42–43.)  Each call came from the same phone number and recited a pre-recorded message intended for someone other than Kalmbach.  (*Id.* ¶ 42.)

During one such call, Kalmbach pressed a button on her phone to continue, which led to another pre-recorded message encouraging her to support the NRA or become an NRA member.  (*Id.* ¶ 43.)  When Kalmbach could not reach a live caller during that call, she instead called back the same number "to indicate her desire that the calls stop."  (*Id.* ¶ 44.)  According to her Complaint, Kalmbach still received "numerous unsolicited pre-recorded calls" from InfoCision over a three-week period.  (*Id.* ¶ 45.)

Kalmbach sued in state court, seeking to represent two statewide classes:

**Washington State Pre-Recorded Call Class**: All persons within Washington State who from the last four years prior to the filing of the initial complaint in this case through the present: (1) received a commercial solicitation call from Defendants; (2) through the use of an automatic telephone dialing system and/or prerecorded voice.

**Washington State Do Not Call Class**: All persons within Washington State who from the last four years prior to the filing of the initial complaint in this case

---

[2] Kalmbach does not specifically allege that the NRA is a "nonprofit"; however, her Complaint refers to NRA's business registration with the Washington Secretary of State under Unified Business Identifier (UBI) 601441332, a copy of which is attached as Exhibit A.  That registration lists the NRA as a nonprofit.  Because Kalmbach's Complaint incorporates NRA's business registration by reference, the Court can refer to it on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  Likewise, the Court can take judicial notice of NRA's Washington and New York business registrations because those documents are public records.  *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003).  A copy of the NRA's New York entity information page is attached as Exhibit B.

DEFENDANTS' MOTION TO DISMISS -2-

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

through the present: (1) Defendants (or a third person acting on behalf of Defendants) called on his/her telephone; (2) for the purpose of selling goods and services; and (3) Defendants called again within 12 months after the person indicated to Defendants s/he no longer wished to receive calls from Defendants.

through the present: (1) Defendants (or a third person acting on behalf of Defendants) called on his/her telephone; (2) for the purpose of selling goods and services; and (3) Defendants called again within 12 months after the person indicated to Defendants s/he no longer wished to receive calls from Defendants.

(*Id.* ¶ 52.)

InfoCision and the NRA timely removed the case to this Court and now move to dismiss Kalmbach's Complaint.

## LAW AND ARGUMENT

**I.    The WADAD does not provide a private right of action separate from the WCPA.**

Alleged WADAD violations are actionable only through the WCPA, so the Court should dismiss Kalmbach's separate WADAD claim. Kalmbach asserts two claims based on the Defendants' alleged violations of the WADAD: (1) count one, brought under the WADAD itself; and (2) count three, brought under the WCPA through a provision in the WADAD stating that a "violation of this section is a violation of [the WCPA]." (Compl. ¶¶ 59–63, 69–73.) But the WADAD does not "create a private cause of action; it provides only a per se violation of the Consumer Protection Act." *Agne v. Rain City Pizza, L.L.C.*, No. C10-1139-JCC, 2011 WL 11798573, at *4 (W.D. Wash. June 17, 2011) (dismissing plaintiff's WADAD claim). Thus, the Court should dismiss count one and analyze the Defendants' alleged WADAD violation through count three, Kalmbach's WCPA claim.

**II.    Kalmbach's WADAD/WCPA claim fails.**

**A.    Kalmbach lacks standing to recover for a violation of the WADAD.**

Kalmbach's WADAD/WCPA claim fails because she lacks standing to pursue it in this Court. To establish standing, Kalmbach bears the burden of proving that she: (1) suffered an injury in fact; (2) her injury is fairly traceable to the challenged conduct of the Defendants; and (3) her injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1547 (2016). Because Kalmbach's alleged injuries are not fairly

traceable to any alleged wrongful conduct by InfoCision or the NRA, Kalmbach lacks standing to pursue her WADAD claim. *See Ewing v. SQM US, Inc.*, --- F. Supp. 3d. ----, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *1 (S.D. Cal. Sept. 29, 2016); *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016).

Injuries resulting from receiving calls, rather than receiving *autodialed* calls, are not caused by a violation of the law and thus cannot confer standing. In *Ewing*, the plaintiff alleged that the defendants violated the WADAD's federal counterpart, the TCPA, by using an autodialer to call his cell phone without permission. *Ewing*, 2016 WL 5846494, at *1. The plaintiff alleged a predictable injury: he incurred a charge for the defendant's call. *Id.* at *2. But the court dismissed the TCPA claim because the plaintiff failed to show how his alleged injury—the cost incurred as a result of the defendants' call—was connected to the defendants' use of an autodialer. *Id.* The court reasoned that the plaintiff would have incurred the same charge even if the defendants dialed his cell phone manually, which would not have violated the TCPA. *Id.* Thus, the plaintiff's alleged harm was not traceable to the alleged TCPA violation, and he lacked standing to sue for that injury. *Id.* at *2–3.

Similarly, in *Romero*, the plaintiff alleged that the defendants violated the TCPA over 290 times by calling her cell phone with an autodialer after the plaintiff had revoked consent. *Romero*, 199 F. Supp. 3d at 1261. The plaintiff argued that she suffered the concrete harm of receiving unwanted calls to her cell phone. *Id.* at 1261–62. But the court concluded that the plaintiff failed to demonstrate an injury sufficient to support Article III standing where, as here, she "would have been no better off had Defendants dialed her telephone number manually." *Id.* at 1265.

Kalmbach's claim is no different. She alleges a slew of injuries—aggravation, nuisance, loss of phone minutes/data, wear and tear, and consumption of battery life—all of which she

DEFENDANTS' MOTION TO DISMISS -4-

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

claims resulted from unwanted calls by InfoCision.[3] (Compl. ¶ 4.) But as in *Ewing* and *Romero*, Kalmbach would have suffered the same injuries (if any) whether InfoCision used an automatic dialing device or dialed her number manually. *Ewing*, 2016 WL 5846494, at *2–3; *Romero*, 199 F. Supp. 3d at 1265. The same is true whether InfoCision used a prerecorded message or a live caller. *Id.* Thus, Kalmbach's alleged harm is not sufficiently traceable to the alleged WADAD violation, and Kalmbach lacks standing to pursue that claim. Accordingly, the Court should dismiss Kalmbach's WADAD/WCPA claim with prejudice.

### B. Kalmbach alleges no facts supporting her conclusion that InfoCision used an automatic dialing and announcing device under the WADAD.

The WADAD prohibits "commercial solicitation" calls using an automatic dialing and announcing device (ADAD), which the statute defines as "'a device which automatically dials telephone numbers and plays a recorded message once a connection is made.'" *Williams v. MCIMetro Access Transmission Servs. Inc.*, 363 F. App'x 518, 519 (9th Cir. 2010) (quoting RCW 80.36.400(1)(a)).

To survive a motion to dismiss, Kalmbach must allege specific facts to support the allegation that InfoCision called her phone number using an ADAD. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (quotations and citations omitted). A "formulaic recitation of [the] elements" of an ADAD "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Cases brought under the WADAD's federal counterpart, the TCPA, show why Kalmbach's allegations fall short of that standard. A TCPA plaintiff must prove that the defendant called her with an automatic telephone dialing system (ATDS), which the TCPA defines as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47

---

[3] Many of these alleged injuries make little sense. Kalmbach alleges that she received the calls at issue on her landline. (Compl. ¶ 42.) There is no logical reason those calls would have caused her to lose cellular minutes or battery life.

DEFENDANTS' MOTION TO DISMISS -5-

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

U.S.C. § 227(a)(1).

To state a valid claim under the TCPA, the plaintiff must allege specific facts concerning the phone calls at issue and the circumstances surrounding them, and must explain why those details and circumstances made him believe that the defendant used an ATDS to call him. *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *10 (N.D. Ill. Dec. 18, 2012). Specifically, a valid TCPA complaint must include "indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that" the defendant used an ATDS. *Id.* at *3.

Thus, courts routinely dismiss TCPA claims where the complaint contains nothing more than a conclusory allegation that the defendant used an ATDS. *See e.g., Engman v. Nationstar Mortgage LLC*, No. 15-CV-01142-AJB-JLB, 2015 WL 12660412, at *2 (S.D. Cal. Dec. 4, 2015) (collecting cases); *Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) (citations omitted) (dismissing TCPA action with prejudice); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2014 WL 3725344, at *2 (N.D. Cal. July 24, 2014) (dismissing complaint because plaintiff merely paraphrased the TCPA's definition of ATDS and offered no factual allegations); *Sepehry-Fard v. Dep't Stores Nat'l Bank, et al.*, 15 F. Supp.3d 984, 988 (N.D. Cal. 2014) (dismissing complaint because plaintiff failed to allege specific facts to support TCPA claim). These cases show that alleging the statutory definition is not enough.

Similarly here, Kalmbach fails to provide even a single fact to support her claim that InfoCision used an ADAD to call her. Instead, she merely alleges that "[a]t all times material [to the complaint], Defendants used an automatic dialing and announcing device ('ADAD') as defined in" the WADAD.[4] (Compl. ¶ 60.) That conclusory recitation of the statutory term—

---

[4] Kalmbach also alleges that "[i]n making the phone calls at issue in this Complaint, Defendants and/or their agents utilized an ATDS. Specifically, the hardware and software used by Defendants (or their agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention." (*Id.* ¶ 39.) But the use of an ATDS is prohibited under the TCPA, not the WADAD. *Compare* 42 U.S.C. § 227(b) (prohibiting calls to cell phones using an ATDS) *with* R.C.W. § 80.36.400 (prohibiting calls

DEFENDANTS' MOTION TO DISMISS -6-

without even referencing the statutory definition—is insufficient to state a claim.  Thus, the Court should dismiss Kalmbach's WADAD/WCPA claim.

### C. InfoCision did not call Kalmbach to engage in "commercial solicitation" as the WADAD requires.

#### 1. "Commercial solicitation" under the WADAD does not include calls made on behalf of nonprofits.

Kalmbach's WADAD/WCPA claim fails because the statute applies only to "commercial solicitations," which—unlike "telephone solicitations" under the WDNC—do not include calls made on behalf of nonprofit entities.

Specifically, the WADAD defines "*commercial* solicitations" to include calls made "for the purpose of encouraging a person to purchase property, goods, or services."  R.C.W. § 80.36.400 (emphasis added).  The WDNC, on the other hand, applies more broadly to "*telephone* solicitations," meaning calls "by a *commercial or nonprofit* company or organization . . . for the purpose of encouraging a person to purchase property, goods, or services, or *soliciting donations of money, property, goods, or services*."  R.C.W. § 80.36.390 (emphases added).

In other words, the WDNC distinguishes *commercial* entities from *nonprofit* entities, and explicitly covers both.  The WADAD, on the other hand, applies only to *commercial* solicitation, and, unlike the WDNC, omits any reference to nonprofit entities.  Thus, on its face, the WADAD is limited to *commercial* entities, and excludes nonprofits.

The WADAD's narrower scope is not a mistake.  The Washington General Assembly passed both statutes in 1986.  The WDNC's broader language shows that the General Assembly knew how to regulate nonprofits and solicitations of donations when it wanted to.  But it chose to draft the WADAD to include only commercial solicitations, and to omit calls made on behalf of nonprofit companies and calls made to solicit donations.

Courts have recognized that the legislature chooses its terms deliberately, so "[w]hen the legislature uses two different terms in the same statute, courts presume the legislature intends the

---

using an ADAD for commercial solicitation).  Thus, Kalmbach's allegation that InfoCision used an ATDS is not only conclusory, but also irrelevant to her WADAD/WCPA claim.

DEFENDANTS' MOTION TO DISMISS -7-                                BAKER & HOSTETLER LLP
                                                                 999 Third Avenue, Suite 3600
                                                                 Seattle, WA  98104-4040
                                                                 Telephone:  (206) 332-1380

terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 162 Wash. 2d 210, 219, 173 P.3d 885, 889 (2007). This Court has recognized the same principle in the context of these two statutes, distinguishing between the General Assembly's use of the phrase "telephone call" in the WDNC and the phrase "telephone conversation" in the WADAD. *Hartman v. United Bank Card, Inc.*, No. C11-1753JLR, 2012 WL 12882864, at *4 (W.D. Wash. Mar. 23, 2012). So, by referring to "commercial" and "nonprofit" entities separately in the WDNC, the legislature demonstrated its intent that the two terms be given separate meanings.

Courts must also "give preference to an interpretation of a statute that gives effect to each word, and avoids surplusage." *Ruiz v. Mercer Canyons, Inc.*, No. 1:14-CV-03032-SAB, 2015 WL 328894, at *4 (E.D. Wash. Jan. 23, 2015) (rejecting interpretation that "would render [a] subsection redundant"). Here, interpreting the WADAD to apply to both commercial and nonprofit entities without specifically mentioning nonprofits would render the WDNC's express application to "commercial or nonprofit" entities superfluous. The Court should avoid such an interpretation, and apply the WADAD according to its plain language. *See id.* (rejecting interpretation that "would render [another] subsection redundant").

### 2. "Commercial solicitation" under the WADAD does not apply to recruiting members to a nonprofit advocacy group, which is akin to soliciting donations.

Kalmbach's WADAD/WCPA claim also fails because recruiting members to a nonprofit advocacy organization is not "commercial solicitation."

While the WDNC includes calls made "for the purpose of encouraging a person to purchase property, goods, or services, or *soliciting donations of money, property, goods, or services*," R.C.W. § 80.36.390 (emphases added), the WADAD applies to commercial calls only—i.e., calls made to encourage the "purchase of property, goods, or services." R.C.W. § 80.36.400. Again, given that the General Assembly passed both statutes in the same year, the WADAD's narrower scope is not accidental, and reflects the legislature's judgment that the WADAD excludes nonprofit fundraising activities from its scope.

The membership-recruitment calls at issue here are not "commercial solicitation" under

DEFENDANTS' MOTION TO DISMISS -8-

the WADAD. When it recruits members, the NRA is not selling "property, goods, or services," but instead is "soliciting donations." *See All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1212, 107 Cal. Rptr. 3d 861, 882–83 (2010) (holding that a "nonprofit trade association [which] acts on its members' behalf" is not "a person primarily engaged in the business of selling or leasing goods or services" under California anti-SLAPP statute).

Kalmbach is wrong to suggest that incidental benefits convert membership-recruitment calls into commercial solicitations. That NRA members receive gifts like a free duffel bag or magazine subscription with their donation, does not transform their membership contributions into "purchases" any more than contributions to a local public-radio station become "purchases" if the station gives away a branded mug or t-shirt to every donor. Nor would it make sense to characterize a charitable contribution as a "purchase" of food if, as a result of that contribution, the donor received an invitation to an annual luncheon. Accordingly, because InfoCision's calls on the NRA's behalf did not encourage the "purchase of property, goods, or services," but instead encouraged contributions or donations not covered by the WADAD, Kalmbach's WADAD/WCPA claim fails.

### III. Kalmbach fails to allege facts to support her WDNC claim.

Kalmbach's WDNC claim fails because she does not allege that she engaged in a conversation, as the statute defines that term. The WDNC prohibits any "telephone solicitation" for one year after the called party requests not to receive further calls. R.C.W. § 80.36.390(3)(a). "Telephone solicitation" is defined as "the unsolicited initiation of a telephone call by a commercial or nonprofit company or organization to a residential telephone customer *and conversation* for the purpose of encouraging a person to purchase property, goods, or services or soliciting donations of money, property, goods, or services." R.C.W. § 80.36.390(1) (emphasis added).

Thus, a defendant cannot violate the WDNC unless it both (a) "initiat[es] a telephone call" *and* (b) conducts a "conversation." *See Hartman v. United Bank Card, Inc.*, No. C11-

DEFENDANTS' MOTION TO DISMISS -9-

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

1753JLR, 2012 WL 12882864, at *4 (W.D. Wash. Mar. 23, 2012) (noting that "[t]he plain statutory language of RCW 80.36.390 differentiates between the initiation of a telephone 'call' and . . . [a] 'conversation,' and therefore, the court will afford the words 'call' and 'conversation' different meanings."). A conversation, for purposes of Washington's calling statutes, means "the act or an instance of talking together," or the "verbal exchange of ideas, opinions, etc." *Id.* at *4 (quotations omitted).

But here, Kalmbach does not allege that any such "conversation" took place during any of InfoCision's calls to her. In fact, Kalmbach says the opposite—namely, that despite her efforts, "she was unable to get a live agent on the telephone in order to ask them to stop calling." (Compl. ¶ 43.) For that reason alone, based on the plain and ordinary meaning of the WDNC, Kalmbach's claim fails.

### IV. Kalmbach's invasion-of-privacy claim fails.

Kalmbach also asserts a Washington common-law claim for invasion of privacy. (Compl. ¶¶ 74–76.) Following the Restatement, Washington recognizes an invasion-of-privacy claim where the defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Mark v. Seattle Times*, 96 Wash. 2d 473, 497, 635 P.2d 1081, 1094 (1981) (citing the Restatement (Second) of Torts § 652A). Kalmbach's invasion-of-privacy claim fails for two independent reasons.

*First*, she offers nothing suggesting that the calls were highly offensive. When a plaintiff "fails to allege . . . what was highly offensive about [the] calls," the fact that the defendant made the calls "is not enough to state a claim for invasion of privacy above a speculative level." *Castellanos v. JPMorgan Chase & Co.*, No. 09-CV-00969-H, 2009 WL 1833981, at *10 (S.D. Cal. June 23, 2009) (granting motion to dismiss invasion-of-privacy claim). Kalmbach's Complaint does not clear this hurdle.

Alleging that InfoCision called Kalmbach "on numerous occasions" does not suggest that the calls were offensive, and thus cannot support liability for invasion of privacy. Those

allegations—without more—are "plainly insufficient to state an actionable invasion of privacy claim," as Kalmbach "was free to disregard the calls." *McEndree v. Rash Curtis & Assocs.*, No. 2:10-CV-01079-MCE, 2012 WL 1640465, at *8 (E.D. Cal. May 9, 2012). *See also Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010) (finding 35 to 40 calls over three months insufficient to "rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion"); Restatement (Second) of Torts § 652B (1977), cmt. d. (explaining that no invasion-of-privacy claim exists "for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three," unless "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence"). Again, without additional facts, Kalmbach has not alleged a plausible claim for invasion of privacy.

*Second*, Kalmbach's invasion-of-privacy claim fails because InfoCision did not *intentionally* intrude on *Kalmbach's* solitude or seclusion. Instead, as Kalmbach alleges, InfoCision called Kalmbach's phone number hoping to reach someone else. (Compl. ¶ 42.) But where—as here—the defendant sends a communication meant to reach someone other than the plaintiff, that communication does not amount to an intentional intrusion on that plaintiff's privacy. *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 508 (S.D.W. Va. 2014) (holding that the defendants "could not have had the required intent to intrude upon plaintiff's seclusion because they intended to reach Maxine Bourne rather than plaintiff"). Because that is precisely what Kalmbach alleges here, her invasion-of-privacy claim fails, and the Court should dismiss it.

### V. Kalmbach fails to allege facts supporting the NRA's liability.

Finally, Kalmbach's claims against the NRA fail because Kalmbach has not alleged any facts to support her conclusion that the NRA is liable for calls made by InfoCision.

This Court has previously held that Washington's telemarketing statutes allow defendants to be held vicariously liable for calls made on their behalves by third-party vendors, but only if the plaintiff can establish an agency relationship between the two. *See, e.g., Anderson v.*

DEFENDANTS' MOTION TO DISMISS -11-

1  *Domino's Pizza, Inc.*, No. 11-CV-902 RBL, 2012 WL 1684620, at *4 (W.D. Wash. May 15, 2012) (noting that plaintiff was required to "show that Domino's used, whether by direct use or by agency through [a third-party vendor], an ADAD" to establish WADAD liability).  Thus, Kalmbach must allege facts supporting the legal conclusion that the NRA has "manifest[ed] assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent [has manifested] assent or otherwise consent[ed] so to act." Restatement (Third) of Agency § 1.01 (2006).

Here, Kalmbach's Complaint contains only a handful of conclusory references to InfoCision as the NRA's agent, but no facts to support them.  Instead, the Complaint offers only conclusory allegations:

- The Defendants "make, or have their agents make," unlawful telemarketing calls. (Compl. ¶ 3.)
- "Defendant NRA, on its own and/or through its agents such as Defendant InfoCision, has [engaged in] unsolicited telemarketing."  (*Id.* ¶ 26.)
- "Defendant InfoCision on behalf of NRA, places thousands of outbound telemarketing calls each day to consumers nationwide."  (*Id.* ¶ 28.)
- "In making the phone calls at issue in this Complaint, Defendants and/or their agents utilized an ATDS."  (*Id.* ¶ 39.)
- "Defendants and/or their agents have continually and repeatedly violated" the WADAD, the WDNC, and the WCPA.  (*Id.* ¶¶ 62, 67, 70.)

These allegations are insufficient.  Consistent with the *Twombly*/*Iqbal* pleading standards, courts have dismissed similar vicarious-liability claims where the pleadings contain only conclusory recitations of basic agency elements.  *See*, *e.g.*, *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015).  In *Freidman*, the court granted a motion to dismiss the plaintiff's TCPA class action complaint for failure to state a claim.  Because the plaintiffs simply "alleged that

each Defendant was an agent and/or employee of each other . . . and was acting within the course and scope of said agency," they did not adequately plead vicarious liability. 2013 WL 3026641, at *3. Because the complaint did not allege "facts that might demonstrate the [elements of agency]," the court found that "plaintiffs rel[ied] on legal conclusions as if they were facts" and granted Massage Envy's motion to dismiss for failure to state a claim. *Id*. Similarly, in *Panacci*, the court cited *Friedman* in dismissing a TCPA claim because the complaint contained "virtually no allegations regarding the relationship between" the alleged principal and agent. 2015 WL 3750112, at *7.

The same is true here. Kalmbach alleges no facts that demonstrate an agency relationship; instead, she asserts the legal conclusion that an agency relationship exists. Her Complaint does not allege that the NRA had the ability to control any aspects of the calling campaigns at issue, much less the ability to control what's here at issue—the particular dialing devices and technologies used to place the calls. Nor does her Complaint allege any facts that would render such control plausible. Her pleading thus falls short of *Twombly*'s and *Iqbal*'s requirements. *Imageline, Inc. v. CafePress.com, Inc*., No. CV 10-9794 PSG MANX, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011). Thus, Kalmbach's claims against the NRA fail.

## CONCLUSION

As noted above, the Court should dismiss all four counts of Kalmbach's Complaint:

- Her WADAD claim fails because that statute confers no private right of action and can be enforced only through the WCPA.

- The WCPA claim (enforcing the WADAD) fails for three reasons: (1) Kalmbach lacks standing because her alleged harms are untethered to her alleged statutory violation; (2) she does not adequately allege that InfoCision used an ADAD to call her; and (3) she does not allege a "commercial solicitation," which is required to establish a WADAD violation.

- Her WDNC claim fails because she does not allege that she engaged in a conversation, as that statute requires.

- Her invasion-of-privacy claim fails because she alleges no highly offensive conduct, and at any rate, she alleges that calls to her were placed accidentally, not intentionally.

Furthermore, Kalmbach has not alleged facts sufficient to hold one of the Defendants—the NRA—liable because she offers no facts supporting an agency relationship. So all claims against the NRA fail.

For these reasons, the Court should dismiss each of Kalmbach's claims with prejudice.

DATED this 18th day of May 2017.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*s/Curt Roy Hineline*
*s/James R. Morrison*
Curt Roy Hineline, WSBA #16317
James R. Morrison, WSBA #43043
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Tel: (206) 332-1380
Fax: (206) 624-7317
E-mail: chineline@bakerlaw.com
          jmorrison@bakerlaw.com

Terry M. Brennan (admitted *pro hac vice*)
Michael D. Meuti (admitted *pro hac vice*)
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel: (216) 621-0200
Fax: (216) 696-0740
E-mail: tbrennan@bakerlaw.com
          mmeuti@bakerlaw.com

***Attorneys for Defendants National Rifle Association of America and InfoCision, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Kim D. Stephens<br>Chase Christian Alvord<br>Tousley Brain Stephens PLLC<br>1700 7th Avenue, Suite 2200<br>Seattle, WA 98101-4416<br>Tel: (206) 667-0249<br>Fax: (206) 682-2992<br>kstephens@tousley.com<br>calvord@tousley.com | Steven L. Woodrow<br>Patrick H. Peluso<br>Woodrow & Peluso, LLC<br>3900 E. Mexico Avenue, Suite 300<br>Denver, CO 80210<br>Tel: (720) 213-0675<br>Fax: (303) 927-0809<br>swoodrow@woodrowpeluso.com<br>ppeluso@woodrowpeluso.com |

Stefan Coleman
Adam T. Savett
Law Offices of Stefan Coleman, P.S.
201 S. Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946
law@stefancoleman.com
adam@stefancoleman.com

***Attorneys for Plaintiff Katharyn Kalmbach***

                                                *s/Serita Smith*
                                                Serita Smith
                                                Assistant to Curt Roy Hineline and
                                                James Morrison