UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHARYN KALMBACH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NATIONAL RIFLE ASSOCIATION OF AMERICA, a New York corporation, and INFOCISION, INC., a Delaware corporation,

Defendants.

Case No. C17-399-RSM

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on Defendants InfoCision, Inc. and National Rifle Association of America (the "NRA")'s Motion to Dismiss, brought under Rule 12(b)(6). Dkt. #28. Defendants argue Plaintiff fails to state a claim that Defendants: violated the Washington Automatic Dialing and Announcing Device Statute ("WADAD"), R.C.W. § 80.36.400; violated the Washington Do Not Call Statute ("WDNC"), R.C.W. § 80.36.390; violated the Washington Consumer Protection Act ("WCPA"), R.C.W. § 19.86, *et seq.*; or invaded Kalmbach's (and the class members') privacy under Washington common law. In Response, Plaintiffs argue that the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 1

Complaint adequately satisfies the Rule 12(b)(6) standard. The Court has determined oral argument is unnecessary. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.

## II.   BACKGROUND[1]

Defendant NRA is an organization focused on firearms, including education, training, and advocacy. Pl.'s Compl., Dkt. #1-1 at ¶ 1. Defendant InfoCision is a teleservices company that places unsolicited telemarketing calls on the NRA's behalf and for the NRA's benefit. *Id*. at ¶¶ 2, 28.

Plaintiff Kalmbach is a Washington citizen and resident of King County. *Id*. at ¶ 11. She is not and has never been a member of the NRA. *Id*. at ¶ 47. On November 9, 2007, Ms. Kalmbach registered her landline telephone with the National Do Not Call Registry. *Id*. at ¶ 41. Beginning in July 2016, Plaintiff Kalmbach began to receive daily, unsolicited and prerecorded calls on her landline telephone placed by Defendant InfoCision on behalf of Defendant NRA using phone number 425-405-6193. *Id*. at ¶ 42. The pre-recorded message would state that the call was intended for a woman that is not known by Plaintiff Kalmbach. *Id*. The calls to Ms. Kalmbach were explicitly made to solicit the purchase of an NRA membership. *Id*. at ¶ 46. When the calls continued to be received each day, Plaintiff Kalmbach grew frustrated and eventually pressed the button indicated by the pre-recorded message to proceed with the call as if she was the intended potential customer. *Id*. at ¶ 43. This then brought on another prerecorded message encouraging membership sales and general support for Defendant NRA. *Id*. Plaintiff Kalmbach was prompted to press a button to get a membership, or another button to get additional information. She pressed both, but she was unable to get a live agent on the

---

[1] The following background facts are taken from Plaintiff's Complaint, Dkt. #1, and accepted as true for purposes of ruling on Defendants' Rule 12(b)(6) Motion to Dismiss.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 2

telephone in order to ask them to stop calling. *Id*. at ¶ 43. After this unsuccessful attempt, Ms. Kalmbach called the NRA to indicate her desire that the calls stop. *Id*. at ¶ 44. Despite all of this, Kalmbach continued to receive unsolicited pre-recorded calls placed by Defendant InfoCision on behalf of the NRA for three weeks. *Id*. at ¶ 45.

The NRA hired InfoCision to make the calls. *Id*. at ¶ 25. These calls were made on behalf of the NRA membership organization rather than its charitable companion, the NRA Foundation. *Id.* at ¶¶ 24, 31. In addition to soliciting paid memberships, the NRA markets goods and services to members and potential members, including a magazine subscription, various insurance policies, and a "FREE" duffel bag. *Id.* at ¶¶ 32-33. Further, the NRA disclaims on its membership page that "[c]ontributions, gifts or membership dues made or paid to the National Rifle Association of America . . . are not deductible as charitable contributions for Federal income tax purposes." *Id.* at ¶¶ 29, 37.

On February 10, 2017, Ms. Kalmbach filed a putative class action complaint in state court, and Defendants removed to this Court on March 13, 2017. Dkt. #1. The Complaint contains causes of action brought under the Washington Automatic Dialing and Announcing Device Statute ("WADAD"), R.C.W. § 80.36.400; the Washington Do Not Call Statute ("WDNC"), R.C.W. § 80.36.390; the Washington Consumer Protection Act ("WCPA"), R.C.W. § 19.86, et seq.; and for invasion of privacy under Washington law. Dkt. #1-1 at 13-16.

### III. DISCUSSION

#### A. Legal Standard

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 3

However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

**B. WADAD and CPA Claims**

    **1. Whether WADAD Claim provides a Private Right of Action**

Defendants' Motion begins by arguing that the WADAD does not "create a private cause of action; it provides only a per se violation of the Consumer Protection Act." Dkt. #28 at 4 (citing *Agne v. Rain City Pizza, L.L.C.*, No. C10-1139-JCC, 2011 WL 11798573, at *4 (W.D. Wash. June 17, 2011)).  In her Response, Plaintiff states that it is undisputed that the WADAD "makes a violation of [the WADAD] a violation of the WCPA," but argues that previous cases in this District have not automatically dismissed separate claims based on the underlying statute whenever a WCPA claim is derivative.  Dkt. #29 at 10 (citing *Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270, at *6 (W.D. Wash. Nov. 24, 2014); *Hartman v. United Bank Card Inc.*, No. C11-1753JLR, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012); *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013) (rejecting motion for summary judgment on claims under the WCPA that were wholly derivative of the plaintiff's claims under Washington's Commercial Electronic Mail Act

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 4

("CEMA") RCW 19.190.010 et seq.)). Although Plaintiff admits she cannot have a double-recovery, she argues that there is no basis for striking one set of allegations or the other, as the Washington General Assembly intended for both claims to provide avenues for relief. On Reply, Defendants argue that Plaintiff "does not attempt to refute or distinguish the Court's holding in *Agne*, or address the actual text of the statute." Dkt. #30 at 3. Defendants argue that Plaintiff's cited cases do not address whether WADAD creates a private right of action, and that, absent contrary authority, the Court should "adhere to *Agne*'s well-reasoned conclusion." *Id.* at 3-4.

The Court has reviewed *Agne* and finds that it does not provide the well-reasoned conclusion Defendants assert. The court in *Agne* dismissed a WADAD claim for two reasons: a) because there was "no specific allegation in the complaint that Defendants used an automatic dialing and announcing device to play a recorded message once a connection was made to Plaintiff's telephone" (as required by the statute), and b) because "section 80.36.400 does not appear to create a private cause of action; it provides only a per se violation of the Consumer Protection Act." 2011 WL 11798573 at *4. The *Agne* court provides significant analysis for the first reason and no further analysis for the second. Defendants cite no other case supporting their position. Given Ms. Kalmbach's analogous case law above, the Court concludes that both causes of action can proceed at this early stage in the litigation.

### 2. Standing

Defendants argue Ms. Kalmbach lacks standing to bring a claim under the WADAD for lack of an injury because "Kalmbach would have suffered the same injuries (if any) whether InfoCision used an automatic dialing device or dialed her number manually," or whether InfoCision used a prerecorded message or a live caller." Dkt. #28 at 6 (citing two cases brought

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 5

under the federal Telephone Consumer Protection Act ("TCPA"), *Ewing v. SQM US, Inc.*, --- F. Supp. 3d. ----, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *2-3 (S.D. Cal. Sept. 29, 2016) and *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1265 (S.D. Cal. 2016)). In Response, Ms. Kalmbach argues that *Ewing* and *Romero*, authored by the same judge, "misunderstand how calls made using an autodialer are more annoying than manually placed calls." Dkt. #29 at 11.  Ms. Kalmbach highlights how the injury comes from the fact that autodialed calls "are incessant," and that when one answers such a call the first thing the person hears is either a computerized recording or dead air—neither of which allow the person to inform a human being to stop harassing them like a call placed by a person would allow." *Id*. Ms. Kalmbach cites to other cases that have rejected the standing arguments of *Romero* and *Ewing*.  *Id*. at 12 (citing *LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 215 F. Supp. 3d 1138, at 1147 (D.N.M. 2016); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-CV-05486-JCS, 2017 WL 733123, at *7 (N.D. Cal. Feb. 24, 2017); *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-CIV, 2017 WL 1080342, at *3 (S.D. Fla. Mar. 22, 2017); *DeClue v. United Consumer Fin. Servs. Co.*, No. 16CV2833 JM (JMA), 2017 WL 1400144, at *2 (S.D. Cal. Apr. 19, 2017); *Mbazomo v. Etourandtravel, Inc.*, No. 2:16-cv-02229-SB, 2016 WL 7165693, at *2 (E.D. Cal Dec. 8, 2016)).

      The Court agrees with Ms. Kalmbach.  She has alleged an injury in fact, fairly traceable to the use of an autodialer and prerecorded message, which can be redressed by this Court.  Ms. Kalmbach has adequately pled facts to reasonably infer that her injury would not have occurred without Defendants' incessant autodialing and use of a prerecorded message, given that she had attempted to make it clear that Defendants were calling the wrong person.  She has standing on this claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 6

### 3. Whether InfoCision used an Automatic Dialing and Announcing Device

The WADAD defines an automatic dialing and announcing device as "a device which automatically dials telephone numbers and plays a recorded message once a connection is made." R.C.W. § 80.36.400(1)(a).

Defendants argue that Ms. Kalmbach fails to allege sufficiently specific facts to conclude that InfoCision used an automatic dialing and announcing device as required under the WADAD. Dkt. #28 at 6. In Response, Ms. Kalmbach argues that, because the Complaint alleges that she personally received these calls, because these calls repeatedly called her trying to reach someone else, and because the Complaint alleges that the calls were made using an announcing device, this conclusion resides within her personal particular knowledge and this is sufficient to satisfy the *Twombly/Iqbal* standard. Dkt. #29 at 13-14. On Reply, Defendants argue that the number of calls "by no means preclude the possibility or even the likelihood that InfoCision manually dialed Kalmbach's phone number." Dkt. #30 at 6.

The Court finds that Ms. Kalmbach does not need to, at this stage, convince the Court that the number of calls *precludes* the possibility that these calls were manually dialed, she need only plead with adequately specific facts to meet facial plausibility. *Twombly*, 550 U.S. at 570. The number and content of the calls satisfy this requirement. Although Ms. Kalmbach fails to present *direct* evidence that an automatic dialing and announcing device was used, it is unclear to the Court how she would obtain such evidence without discovery. Making all inferences in the light most favorable to Plaintiff as the non-moving party, she has adequately pled sufficient personal experiences with these phone calls to bring this claim on her own behalf. *See Baker, supra*.

### 4. Whether InfoCision is protected by the NRA's Nonprofit Status

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 7

The WADAD applies only to "commercial solicitations," defined as calls made "for the purpose of encouraging a person to purchase property, goods, or services." R.C.W. § 80.36.400. Defendants argue that the WADAD does not apply to calls recruiting members to a nonprofit advocacy organization. Dkt. #28 at 9. Defendants argue that the NRA was recruiting membership and soliciting donations, not selling "property, goods or services," and that just because NRA members "receive gifts like a free duffel bag or magazine subscription with their donation, does not transform their membership contributions into 'purchases.'" *Id*. at 10. Ms. Kalmbach points out that the Complaint alleges that "the calls here were made on behalf of the NRA membership organization rather than its charitable companion, the NRA Foundation." Dkt. #29 at 17 (citing Dkt. #1-1 at ¶24 and ¶31).

The Court disagrees that the WADAD cannot apply to any calls made on behalf of nonprofit organizations. Such calls could still be encouraging a person to purchase property, goods, or services. Defendants cite to no controlling law to convince the Court otherwise. Taking the facts in the Complaint as true, the Court finds that a reasonable factfinder could easily determine that Defendants were making calls for the purpose of encouraging a person to purchase property, goods, or services as part of magazine membership rather than as a gift for a charitable contribution, and that this is a commercial solicitation. This is adequate to survive a 12(b)(6) motion.

**C. WDNC Claim**

Defendants argue that this claim must be dismissed because Ms. Kalmbach does not allege that a "conversation" took place, as required by the statute. Dkt. #28 at 10-11 (citing R.C.W. § 80.36.390(1)). In Response, Ms. Kalmbach cites to *Hartman v. United Bank Card, Inc.*, No. C11-1753JLR, 2012 WL 12882864, at *4 (W.D. Wash. Mar. 23, 2012), finding that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 8

the statute "prohibits the *initiation* of a telephone conversation." (emphasis in original). On Reply, Defendants correctly point out that Ms. Kalmbach is referencing the *Hartman* court's discussion of the WADAD, not the WDNC, and argue:

> Kalmbach also misapprehends the statute. In relevant part, the WDNC states that it applies to two things: "the unsolicited initiation of a telephone call by a commercial or nonprofit company or organization to a residential telephone customer and conversation for the purpose of encouraging a person to purchase property, goods, or services or soliciting donations of money, property, goods, or services." R.C.W. § 80.36.390(1) (emphasis added). Thus, a defendant cannot violate the WDNC unless the call in question involves both (a) the "initiation of a telephone call" and (b) a "conversation." Kalmbach posits that the phrase "initiation of" should apply to both subsequent clauses— that is, to both calls and conversations—but the statute's text shows otherwise. Under subsection (2), callers making "telephone solicitations" must identify themselves and their organizations within the first 30 seconds, which suggests a live, person-to-person conversation, rather than a prerecorded call. *Id*. § 80.36.390(2). And under subsection (3), "[i]f, at any time during the telephone contact, the called party" requests not to be called again, the caller must honor that request for at least one year. *Id*. § 80.36.390(3). That subsection also presumes that a "telephone solicitation" involves a conversation with the caller. Otherwise, the statute would make no sense, as it could not possibly apply to the type of prerecorded messages that Kalmbach alleges here.

Dkt. #30 at 10-11.

The Court agrees with Defendants' analysis above and finds that Ms. Kalmbach has not alleged a conversation took place in any call from Defendants, and that this is required to bring a WDNC claim. This claim will be dismissed without prejudice and with leave to amend as the Court concludes that it is possible for Ms. Kalmbach to allege other facts, consistent with the challenged pleading, to cure this deficiency. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 9

### D. Invasion of Privacy Claim

Washington recognizes an invasion-of-privacy claim where the defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… if the intrusion would be highly offensive to a reasonable person." *Mark v. Seattle Times*, 96 Wash. 2d 473, 497, 635 P.2d 1081, 1094 (1981) (citing the Restatement (Second) of Torts § 652A).

Defendants argue that Ms. Kalmbach's common law invasion of privacy claim must be dismissed because "she offers nothing suggesting the calls were highly offensive," and because Defendants did not intentionally intrude on *Ms. Kalmbach's* solitude or seclusion because Defendants were attempting to reach a different person under the facts of the Complaint. Dkt. #28 at 11-12. Defendants argue that the fact that they called Ms. Kalmbach on numerous occasions does not alone create offense as she was free to disregard the calls. *Id*. (citing *McEndree v. Rash Curtis & Assocs.*, No. 2:10-CV-01079-MCE, 2012 WL 1640465, at *8 (E.D. Cal. May 9, 2012); *Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010); Restatement (Second) of Torts § 652B (1977), cmt. d)).

The Court concludes that the Complaint, taking all inferences in the light most favorable to Plaintiff, pleads facts adequate to meet the requirements of this tort. Defendants did not need to know the identity of who they were calling for their actions to be intentional; by the facts of the Complaint, Defendants intended to call the number that they called. It is a fact-intensive inquiry whether the numerous phone calls were sufficiently offensive and the Court will not now rule as a matter of law that the number of alleged phone calls was insufficient, or that their incessant interruption of her life, after she attempted to have them end, did not constitute highly offensive conduct.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 10

### E. Claims against the NRA

Finally, Defendants argue that all claims against the NRA should be dismissed because Ms. Kalmbach has not alleged any facts to support her conclusion that the NRA is liable for calls made by InfoCision. Dkt. #28 at 12. Defendants argue that Ms. Kalmbach must establish that an agency relationship existed between InfoCision and the NRA. *Id*. at 12-13 (citing *Anderson v. Domino's Pizza, Inc.*, No. 11-CV-902 RBL, 2012 WL 1684620, at *4 (W.D. Wash. May 15, 2012)). Although the Complaint alleges an agency relationship, Defendants argue that the allegations are conclusory. *Id*. at 13. Ms. Kalmbach argues in her Response that the Complaint could support an agency relationship under theories of apparent authority or ratification. Dkt. #29 at 26-28. Defendants do not provide any significant opposition to those theories on Reply. *See* Dkt. #30 at 13.

The Court concludes that the facts as pled and cited to by the parties in briefing are not conclusory and provide sufficient detail to allege agency under the *Twombly*/*Iqbal* standard. Although an allegation like "Defendant NRA, on its own and/or through its agents such as Defendant InfoCision, has [engaged in] unsolicited telemarketing" appears conclusory in isolation, it is not when supported by the rest of the facts in the Complaint, which indicate from Ms. Kalmbach's personal experience that InfoCision was contacting her on behalf of the NRA. Ms. Kalmbach will not be required to prove the entirety of her case, including the internal details of the business relationship between the Defendants, prior to discovery. The NRA remains in this case.

### IV.   CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss (Dkt. #28) is GRANTED IN

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 11

PART AND DENIED IN PART as set forth above. Plaintiff is granted leave to file an Amended Complaint curing the above-mentioned deficiencies **no later than thirty (30) days** from the date of this Order. Failure to file an Amended Complaint within this time period will result in dismissal of Plaintiff's WDNC claim.

DATED this 26 day of July, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 12