THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

**KATHARYN KALMBACH**, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

**NATIONAL RIFLE ASSOCIATION OF AMERICA**, a New York corporation, and **INFOCISION, INC.**, a Delaware corporation,

*Defendants*.

Case No. 2:17-cv-00399-RSM

**DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION**

Date Noted: March 2, 2018

ORAL ARGUMENT REQUESTED

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Defendants InfoCision, Inc. ("InfoCision") and the National Rifle Association of America ("NRA") respectfully move the Court to deny certification of plaintiff Katharyn Kalmbach's putative class because Kalmbach is not an adequate class representative.

Rule 23 encourages early resolution of class certification. Thus, defendants may move to deny class certification when there is sufficient evidence to conclude that certification is inappropriate. Already in this case, Kalmbach has demonstrated that she cannot recall the basic facts underlying her claims, has given false or conflicting deposition testimony on a number of topics, and has shown that she lacks a basic knowledge or understanding of the legal issues in the case and the class she seeks to represent. Moreover, during Kalmbach's only other service in a

DEFENDANTS' MOTION TO DENY    - 1 -
CLASS CERTIFICATION

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

representative capacity—as administrator of an estate—a court sanctioned and removed her from that role for failure to discharge her duties and failure to follow court orders. Kalmbach later settled a fraud lawsuit brought by the beneficiaries of that estate, who alleged that Kalmbach had siphoned funds from the estate to pay for vacations, gambling, cruises and other personal expenses. In short, discovery has revealed that Kalmbach is not—and can never be—an adequate class representative under Rule 23. Thus, the Court should rule now that Kalmbach cannot represent the putative class.

## FACTS

InfoCision is a private teleservices company that provides inbound and outbound call-center services, direct mail, and other direct-marketing solutions to corporations and nonprofit organizations. (Compl. ¶ 2; InfoCision Ans. ¶ 2; NRA Ans. ¶ 2.) The NRA is a nonprofit membership organization that provides firearms education, training, and advocacy to the public. (Compl. ¶¶ 1, 12; InfoCision Ans. ¶¶ 1, 12; NRA Ans. ¶¶ 1, 12.) The NRA hires InfoCision to make calls to recruit members and to solicit donations that help fund the NRA's education and advocacy programs. (Compl. ¶¶ 28, 30; InfoCision Ans. ¶¶ 28, 30; NRA Ans. ¶¶ 28, 30.)

Kalmbach filed this putative class action in state court after allegedly receiving an unidentified number of those calls. In her Complaint, Kalmbach alleged that InfoCision and the NRA: (i) violated the Washington Automatic Dialing and Announcing Device Statute (WADAD), R.C.W. § 80.36.400; (ii) violated the Washington Do Not Call Statute (WDNC), R.C.W. § 80.36.390; (iii) violated the Washington Consumer Protection Act (WCPA), R.C.W. § 19.86, *et seq.*; and (iv) invaded Kalmbach's (and the class members') privacy under Washington common law. (Compl. ¶¶ 59-76.)

After removing the case to this Court, InfoCision and the NRA moved to dismiss. (Mot. to Dismiss, ECF# 28.) The Court granted that motion in part, dismissing Kalmbach's WDNC claim, and denied it with respect to her WADAD, WCPA, and invasion-of-privacy claims. (Order, ECF# 33.)

DEFENDANTS' MOTION TO DENY      - 2 -      BAKER & HOSTETLER LLP
CLASS CERTIFICATION                        999 Third Avenue, Suite 3600
                                           Seattle, WA 98104-4040
                                           Telephone: (206) 332-1380

Based on her remaining claims, Kalmbach seeks to represent a class consisting of "[a]ll persons within Washington State who from the last four years prior to the filing of the initial complaint in this case through the present: (1) received a commercial solicitation call from Defendants; (2) through the use of an automatic telephone dialing system and/or prerecorded voice." (Compl. ¶ 52.)[1]

On August 30, 2017, InfoCision sent a notice of deposition for Kalmbach to appear and give testimony at defense counsel's Seattle offices on September 11, 2017. (Sept. 20, 2017 email chain attached hereto as Exhibit A.) Kalmbach's counsel responded later that day that Kalmbach could not appear on September 11, but that he would circulate alternative dates. (Id.)

Three weeks later, on September 20, Kalmbach's counsel proposed dates in late October and late November, and requested that—due to a disability that makes it hard for Kalmbach to travel—the deposition be moved from defense counsel's offices in Seattle to a hotel in Lynnwood, about 20 miles north. (Id.) Defendants agreed, and deposed Kalmbach in Lynnwood on October 24, 2017. (Id.)

At her deposition, Kalmbach not only revealed the myriad defects in her substantive claims, but she also demonstrated her inability to adequately protect the interests of the proposed class. For instance, when asked whether she had previously served in a representative capacity, Kalmbach acknowledged that she had served as an administrator of her adoptive mother's will. (Kalmbach Dep. (Morrison Decl. Ex. C) 139:1–25.) As Kalmbach then admitted, the court removed her from that role for failing to administer the estate in a timely manner, violating court orders, and failing to follow local rules. (Kalmbach Dep. Exs. 6 & 7.) And not only did she neglect her duties to the estate's beneficiaries, but the successor administrator later sued Kalmbach for defrauding the estate of more than $580,000, which Kalmbach allegedly spent on casinos, travel, diet supplements, and other personal expenses. (Kalmbach Dep. Ex. 8, at ¶ 3.6.)

---

[1] Kalmbach also sought to represent a second class based on Defendants' alleged "Do Not Call" violations. (*Id.*) Given the dismissal of her WDNC claim, however, Kalmbach's putative "Do Not Call" class is now moot.

| DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION | - 3 - | BAKER & HOSTETLER LLP<br>999 Third Avenue, Suite 3600<br>Seattle, WA 98104-4040<br>Telephone: (206) 332-1380 |

Kalmbach admitted the $580,000 debt to the estate in a subsequent bankruptcy filing, and later entered into a settlement with the administrator. (Kalmbach Dep. 152:6–10; 153:12–158:10 & Ex. 9.)

Kalmbach also gave false or conflicting testimony on a number of topics. She denied holding any interest in any company since 2000, but later admitted to partial ownership of a family LLC and a sole proprietorship with its own taxpayer ID number. (Kalmbach Dep. 13:10–13; 148:9–150:2; 159:19–161:22.) Kalmbach denied involvement in any lawsuits outside her bankruptcy and the fraud suit by her successor administrator, despite public records showing she has been party to at least two other suits, including as a plaintiff. (Kalmbach Dep. 167:22–24 & Exhibit 3; *Kalmbach v. Safeway, Inc.*, W.D. Wash. No. 2:00-cv-01014, Docket, attached as Exhibit B to the Morrison Decl.)[2] She also changed her testimony about the number of calls she received from the defendants, and when she purchased the phones that allegedly suffered "wear and tear" as a result of those calls. (Kalmbach Dep. 85:1–9; 86:2–4; 191:2–6; 92:20–95:1.)

When asked about her Complaint, Kalmbach either could not recall key details like the frequency, length, time of day, and content of the calls at issue or the claims remaining in the case, or she outright contradicted her prior allegations. (Kalmbach Dep. 74; 76; 87–88; 89; 90–91; 92; 101; 122; 123; 183.) For example, Kalmbach asserts in her Complaint that her damages include lost payments to wireless carriers, "wear and tear" on the phone, consumption of battery life, and lost cellular minutes. (Compl. ¶ 4.) But when asked about her damages at deposition, Kalmbach stated she suffered only annoyance, lost time, and aggravation. (Kalmbach Dep. 120:3–10.)

---

[2] The Court can take judicial notice of these public filings. *See* Fed. R. Evid. 201(b); *Kottle v. Law Offices of Patenaude & Felix A.P.C*, No. 13-CV-161-H-BGS, 2013 WL 12075974, at *1 (S.D. Cal. May 16, 2013) ("Courts routinely take judicial notice of documents filed on public court dockets under Rule 201(b)."); *ColFin AI-CA 5, LLC v. Perez*, No. 2:14-CV-04037-SVW-CW, 2014 WL 12603196, at *1 (C.D. Cal. June 3, 2014) (taking judicial notice "judicial notice of the public docket and filings in" a separate bankruptcy case).

Based on that deposition testimony and other evidence gathered in discovery, Defendants now move to deny class certification because Kalmbach is not an adequate class representative.

## LAW AND ARGUMENT

### I. Legal Standard

The Ninth Circuit allows defendants in a class action lawsuit to raise class certification issues preemptively by filing a motion to deny class certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–40 (9th Cir. 2009) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question."). *See also Coe v. Philips Oral Healthcare Inc.*, No. C13-518 MJP, 2014 WL 5162912 (W.D. Wash. Oct. 14, 2014) (granting motion to deny class certification).

Such motions are appropriate even when discovery is not yet complete or has yet to begin. *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *3 (E.D. Cal. Mar. 3, 2014) ("[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate) (quotations omitted); *In re Walls,* 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001) (considering a motion to deny class certification because "[i]f, as a matter of law, a class cannot be certified . . . it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification"); *Lumpkin v. E.I. Du Pont de Nemours & Co.,* 161 F.R.D. 480, 481 (M.D. Ga. 1995) (finding class certification prior to discovery appropriate when "awaiting further discovery will only cause needless delay and expense").

Regardless of which party moves, the plaintiff retains the burden of proving, with evidence, the facts necessary to satisfy Rule 23. Thus, "even under a motion to deny class certification" initiated by a defendant, "it is Plaintiff who bears the burden of showing" she can satisfy the challenged elements of Rule 23, including that the plaintiff "is an adequate representative." *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *5

(E.D. Cal. Mar. 3, 2014).  *See also Vinole*, 571 F.3d at 939, 944 n.9.

Here, the Court should deny class certification because Kalmbach cannot meet her burden of proving that she is an adequate class representative under Rule 23(a)(4).

## II.     Kalmbach is not an adequate class representative.

### A.  Kalmbach owes fiduciary duties to the proposed class.

"Rule 23 class representatives owe fiduciary duties to absent class members and are responsible for critical litigation decisions on behalf of the class." *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1396–97 (N.D. Cal. 2014).  Thus, "[i]n assessing the adequacy of a proposed class representative, the court must feel certain that the class representative will discharge his fiduciary obligations by fairly and adequately protecting the interests of the class." *In re Chiron Corp. Sec. Litig.*, No. C-04-4293VRW, 2007 WL 4249902, at *14 (N.D. Cal. Nov. 30, 2007) (quotations omitted).  Indeed, "[a]dequacy of representation is perhaps the most significant of the prerequisites to a determination of class certification," and requires the Court to consider "the honesty, trustworthiness, and credibility of the named class representative." *Flores v. EP2, Inc.*, No. CV0907872DDPFMOX, 2011 WL 13213897, at *4–5 (C.D. Cal. Mar. 24, 2011) (quotations omitted).

When assessing potential representatives' credibility and fitness, courts have considered, among other things, prior fraudulent or dishonest conduct, false or conflicting testimony, inconsistencies between testimony and written pleadings, and the representative's inability to recall key details about the events underlying her claims. *Flores*, 2011 WL 13213897, at *4–5 (lack of recollection of key events); *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 537 (N.D. Tex. 2005) (lack of knowledge and understanding); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86–87 (2d Cir. 1998) (changing and contradictory testimony); *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 200–01 (S.D.N.Y. 2015); *Kaplan v. Pomerantz*, 132 F.R.D. 504 (N.D. Ill. 1990) (false and misleading testimony); *In re Proxima Corp. Sec. Litig.*, No. 93–1139–IEG, 1994 WL 374306, at *17 (S.D. Cal. May 3, 1994) (lack of integrity); *Gbarabe v. Chevron*

1 *Corp.*, No. 14-CV-00173-SI, 2017 WL 956628, at *34 (N.D. Cal. Mar. 13, 2017) (lack of credibility).

Here, Kalmbach's history of fraud, her failure to comply with her fiduciary duties as administrator of an estate, her inability to recall key facts surrounding the events in her Complaint, and her various false, conflicting, and evasive statements preclude her from serving as a class representative.

**B.  Kalmbach previously neglected her fiduciary duties in a similar role.**

First, Kalmbach has already demonstrated that she is incapable of serving as a class representative based on her history of misconduct when acting as a fiduciary. *See In re Proxima Corp.*, 1994 WL 374306, at *17 (plaintiff inadequate based on prior fraudulent conduct); *Hall v. Nat'l Recovery Sys., Inc.*, No. 96-132-CIV-T-17(C), 1996 WL 467512, at *5 (M.D. Fla. Aug. 9, 1996) (plaintiff inadequate based on history of "impeachable crimes" and fraudulent conduct).

*Proxima* shows why Kalmbach cannot represent this putative class.  There, the district court held that one of the putative class representatives—John Probandt—was not an adequate class representative based on prior allegations that he committed fraud and breached his fiduciary duties by diverting property development opportunities away from a bankrupt limited partnership. 1994 WL 374306, at *17. As part of the partnership's bankruptcy proceeding, the partnership filed an adversary complaint against Probandt, alleging fraud and breach of fiduciary duty. *Id*. In a subsequent consent judgment entered as part of a settlement, Probandt admitted his role in the fraud and agreed to pay up to $300,000 in damages. *Id.*

Similarly here, Kalmbach admitted her own culpability in the context of a bankruptcy adversary proceeding accusing her of fraud.  In 2003, Kalmbach became the administrator of the estate of Mary L. Riley Ames (the "Ames Estate"), who Kalmbach testified became her adoptive mother when Kalmbach was in her early forties. (Kalmbach Dep. 139:1–25.)

In 2009, however, after failing to settle the estate within the required five-year window and neglecting to file necessary paperwork accounting for the Ames Estate's assets, the court

issued two orders sanctioning Kalmbach. The first rejected an "accounting" Kalmbach had filed a month prior, and required Kalmbach to pay $2,300 in attorneys' fees to the beneficiaries. (Kalmbach Dep. Ex. 6.) The second found that Kalmbach had violated court orders, failed to follow the court's local rules, and otherwise neglected her duties as the estate's administrator. (Kalmbach Dep. Ex. 7.) In that second order, the court removed Kalmbach as administrator and ordered her to pay an additional $5,406.40 in attorneys' fees to the beneficiaries. (Id.)

Then, in 2013, after Kalmbach filed for Chapter 7 bankruptcy, Kalmbach's successor administrator—Alexis Singletary—filed an adversary complaint alleging that Kalmbach had defrauded the Ames Estate of more than $580,000, which Kalmbach had then spent on casinos, restaurants, hotels, diet supplements, cruises, airline and train tickets, and other personal expenses. (Kalmbach Dep. Ex. 8, at ¶ 3.6.) Kalmbach never moved to dismiss that adversary complaint, and never sought sanctions against the successor-administrator for filing frivolous claims. (Kalmbach Dep. 151:17–152:5.) Instead, Kalmbach admitted the $580,000 debt in a subsequent bankruptcy filing—submitted under penalty of perjury—along with other debts to credit-card companies, telephone companies, department stores, and casinos. (Kalmbach Dep. 152:6–10; 153:12–158:10 & Ex. 9.) Kalmbach later settled the successor-administrator's claims for approximately $50,000. (Kalmbach Dep. 152:6–10.)

Kalmbach's history of both nonfeasance and malfeasance when serving as a fiduciary disqualifies her from serving as a class representative in this case. *In re Proxima Corp*, 1994 WL 374306, at *17. Further discovery will not change that fact. Thus, the Court should deny class certification.

### C. Kalmbach has demonstrated a lack of honesty in this case.

In addition to her recent failure as a fiduciary, Kalmbach has demonstrated a lack of candor in this lawsuit as well, making several false and contradictory statements in her deposition testimony. Courts faced with similar examples of class representatives' lack of credibility have refused to certify a class, finding the plaintiffs inadequate to serve in a fiduciary

role. *See Savino*, 164 F.3d at 87; *Gbarabe*, 2017 WL 956628, at *34; *Smyth v. Carter*, 168 F.R.D. 28, 33–34 (W.D. Va. 1996) (plaintiff who used false names, answered evasively, and misrepresented facts deemed inadequate).

For example, in *Gbarabe*, the plaintiffs sued Chevron for negligence after an explosion on an oil rig off the coast of Nigeria, seeking to represent a class of local residents and communities harmed by the explosion and resulting toxic pollution. 2017 WL 956628, at *1–3. One of the putative class representatives—Natto Iyela Gbarabe, a Nigerian fisherman—alleged that his fishing business had been destroyed by the accident. *Id.* at *3  But the court found that Gbarabe's "credibility ha[d] been seriously questioned on numerous issues directly relevant to this case, including his pre-incident fishing income, the allegations in the complaint about his injuries, and whether he was a member of a fishing cooperative." *Id.* at *34.  Based on his lack of credibility, the Court held that Gbarabe was not an adequate class representative. *Id.*

In *Savino*, the plaintiff brought putative class claims alleging that the defendant credit agency violated the Fair Debt Collection Practices Act in its collection letters. *Id.* at 83–85. But as the case proceeded, the plaintiff "repeatedly changed his position as to whether he received" one of the letters at issue, asserting inconsistent facts in his testimony and pleadings. *Id*. at 87. On appeal, the Second Circuit affirmed the district court's denial of class certification, observing that "[t]he fact that [plaintiff] offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial." *Id.* Likewise, Kalmbach's misleading and inconsistent statements render her an inadequate class representative.

Kalmbach's misleading statements began well before her deposition. After her attorneys claimed Kalmbach was not available from September 11 and October 24 to be deposed, she admitted that her only commitments during that time were informal sewing-group meetings, which she attended, on average, just seven times per month, as well as a personal trip to Puerto Vallarta, Mexico. (Kalmbach Dep. 20:2–21:19; 24:9–20; 84:5-9.)

Also, before her deposition, Kalmbach requested a change in location on account of a disability that she claimed prevented her from travelling 20 miles to Seattle to defense counsel's downtown offices. (Kalmbach Dep. 22:14–23:6.) During her deposition, however, Kalmbach admitted that she travels several times a year outside Washington, and leaves her home daily to visit with friends. (Kalmbach Dep. 48:8–49:16; 15:15–24.) In just the past four years, she has traveled to Arizona, Washington, D.C., Kansas, Ohio, California, Alaska, Florida, the Carribean, and to Mexico for a cruise. (Kalmbach Dep. 49:9–16.)

Kalmbach also falsely claimed that she had held no interest in any company since 2000. (Kalmbach Dep. 13:10–13.) But Kalmbach later admitted that—until sometime between 2010 and 2013—she was part owner of the family LLC that she allegedly used to defraud the Ames Estate. (Kalmbach Dep. 148:9–150:2.) In addition to the LLC, Kalmbach also acknowledged that she owned a sole proprietorship—Katharyn's Kreations—which had its own taxpayer ID number and existed until 2013. (Kalmbach Dep. 159:19–161:22.)

When asked about her involvement in other lawsuits, Kalmbach again gave an incomplete response, claiming that she had been involved in only two—the Ames Estate matter and her subsequent bankruptcy. (Kalmbach Dep. 167:22–24.) But public records show otherwise. In 2000, Kalmbach and her husband jointly sued Safeway Inc. in this Court, and settled the case in 2001. (Morrison Decl. Ex. B.) In 2011, Kalmbach faced a breach-of-contract suit for $17,207.69 by FIA Card Services, N.A. (Morrison Decl. Ex. A.) And—as discussed at her deposition—in 1999 Kalmbach filed for a restraining order against a live-in friend who had accused Kalmbach's husband of threatening and sexually harassing her. (Kalmbach Dep. 110:21–112:1 & Ex. 3.)

Kalmbach changed her testimony on several other key points in her deposition. For example, after first testifying that she had answered "One, two – two or three" calls from the defendants, she later claimed it was more than three—even potentially more than five. (Kalmbach Dep. 85:1–9; 86:2–4; 191:2–6.) When asked a series of questions about the "wear

DEFENDANTS' MOTION TO DENY           - 10 -       BAKER & HOSTETLER LLP
CLASS CERTIFICATION                                999 Third Avenue, Suite 3600
                                                   Seattle, WA 98104-4040
                                                   Telephone: (206) 332-1380

1  and tear" on her phones alleged in the Complaint, Kalmbach first claimed that she purchased her
2  current landline phones in 2009, then later admitted that she had replaced the phones in 2014 or
3  2015. (Kalmbach Dep. 92:20–95:1.)

4        Kalmbach even changed her mind about the accuracy of the defendants' records.
5  Kalmbach initially testified that she planned to use those records to identify her class, and
6  acknowledged that she had "no reason to doubt" the accuracy of those records. (Kalmbach Dep.
7  71:22–24; 171:1–9; 176:13–16; 177:14–178:2.) But later, after hearing a recording of one of
8  defendants' calls to her phone number that conflicted with Kalmbach's memory, Kalmbach
9  recanted, claiming that "[r]ecordings can be manipulated" and "audios can be manipulated all
10 over the place." (Kalmbach Dep. 176:17–22; 185:1–16.) In fact, Kalmbach refused to even
11 acknowledge she received that call, claiming she could not recognize her voice from just one
12 word. (Kalmbach Dep. 181:15–21.) Instead of accepting InfoCision's records, Kalmbach stated
13 she would need to look at the records from her own phone company to verify that she received
14 the calls in question. (Kalmbach Dep. 185:17–186:1.) To date, however, Kalmbach has not
15 produced her records in response to InfoCision's discovery requests. *See Gbarabe*, 2017 WL
16 956628, at *34 (credibility is "particularly important" in assessing adequacy where "the
17 testimony of the named plaintiff is essential" due to lack of records).

18       In addition to these internal inconsistencies, Kalmbach's testimony was also inconsistent
19 with the allegations in her Complaint. For example, Kalmbach asserts in her Complaint that her
20 damages include, among other things, "loss of value realized for the monies consumers paid to
21 their wireless carriers," loss of her "use and enjoyment of [her] cellphone[], including the related
22 data, software, and hardware components," "wear and tear" on the phone itself, "consuming
23 battery life," and "appropriating cellular minutes." (Compl. ¶ 4.) For one thing, Kalmbach
24 admitted that none of the calls at issue came to her cell phone, so her alleged loss of cellular
25 minutes and money paid to her wireless carriers were false. (Kalmbach Dep. 92:20–22.) In fact,
26 she testified that calls harmed her in only four ways: (1) annoyance of hearing the phone ringing;

DEFENDANTS' MOTION TO DENY - 11 -    BAKER & HOSTETLER LLP
CLASS CERTIFICATION                    999 Third Avenue, Suite 3600
                                       Seattle, WA 98104-4040
                                       Telephone: (206) 332-1380

(2) the time spent dealing with the calls; (3) the aggravation of trying to reach a live person; and (4) the aggravation of receiving unsolicited calls. (Kalmbach Dep. 120:3–10.) In other words, she did not suffer harm from physical "wear and tear" on her phone as she alleged in her Complaint.

### D. Kalmbach cannot recall key facts underlying her claims.

Where Kalmbach did not fabricate or contradict previous statements during her deposition, she repeatedly claimed not to recall—even in general terms—the facts underlying her claims. This, too, demonstrates her inadequacy as a class representative. *See Flores*, 2011 WL 13213897, at *4–5.

*Flores* shows that plaintiffs who know little about their own claims cannot be trusted to advance those of absent class members. There, the plaintiff sued two nutritional-supplement companies for fraudulent marketing, and moved the court to certify a class based on his claims. *Id.* at *1. The court denied class certification, holding in part that the plaintiff was not an adequate representative because "he was unable to recall what led him to the [defendant's] website or how he came upon the product" at issue. *Id.* at *5. Moreover, "his recollection of the events surrounding his purchase and use of [the supplement was] muddled." *Id.* The plaintiff's lack of credibility and inability to recall these key facts rendered him unfit to fairly and adequately represent the putative class. *Id.*

Similarly here, Kalmbach could not recount even the most basic facts about the phone calls at the heart of her Complaint. At different times in her deposition, Kalmbach stated that she could not recall or did not know: (1) the frequency of the alleged calls; (2) the length of the alleged calls; (3) the time of day she received the calls; (4) how the defendants' identified themselves on the calls; (5) the content of the calls; (6) whether the calls contained any indication they were made with an autodialer, such as a pause before the conversation began; and (7) whether the caller mentioned a duffel bag, hat, insurance, knife, bumper sticker, or decal. (Kalmbach Dep. 74; 76; 87–88; 89; 90–91; 92; 101; 122; 123; 183.)

Despite her inability to remember any of these basic facts about the calls, however, Kalmbach insisted that she recalled certain details—for example, that the caller asked for a person whose name she didn't recognize. Even after listening to a recording of a call to Kalmbach's number in which the caller asks for "Claudia"—Kalmbach's birth name—Kalmbach insisted that she never received a call in which the caller asked for "Claudia." (Kalmbach Dep. 7:19–8:9; 172:24–173:16; 179:7–180:4.) She further disputed the validity of the call recording because, when the caller asked if Claudia was there, the person answering said "yes," which Kalmbach claims she would not have done. (Kalmbach Dep. 172:24–173:16; 181:15—182:5.)

Kalmbach did not take notes about any of the calls or discuss them with anyone else, leaving no record of the calls apart from the records maintained by InfoCision—which Kalmbach refused to accept and speculated might be "manipulated"—and Kalmbach's erratic memory. Kalmbach did testify that she posted a complaint to a website she believed was associated with the federal do-not-call list. That said, Kalmbach could not recall the name of the website, or whether its address ended in ".gov." (Kalmbach Dep. 52:4–9.)

In addition to her inability to describe the underlying facts of her case, Kalmbach showed a lack of knowledge of the litigation and her role as a class representative. For example, she testified that the defendants would violate Washington's automatic-dialing statute by using *either* an autodialer *or* a pre-recorded message. (Kalmbach Dep. 57:9–58:8.) The statute, however, requires both. *See* RCW § 80.36.400 ("An automatic dialing and announcing device is a device which automatically dials telephone numbers *and* plays a recorded message once a connection is made.") (emphasis added). Kalmbach also believed her automatic-dialing claim had been dismissed, when the Court actually dismissed her do-not-call claim, and allowed the automatic-dialing claim to proceed. (Kalmbach Dep. 62:10–24; 7/26/2017 Order, ECF#33.) And with respect to her role as a class representative, Kalmbach testified that one of the key elements of Rule 23—typicality—was not necessary for her to represent a class, and that she did not know whether she was typical of the class in any event. (Kalmbach Dep. 74:1–25; 76:4–18.)

**CONCLUSION**

Kalmbach has demonstrated a lack of honest and fidelity, not to mention a basic knowledge or a memory of the case. Based on her conduct in administering (or failing to administer) her adoptive mother's estate, Kalmbach should not be permitted to serve as a fiduciary for anyone, let alone a potentially massive class of unidentified individuals she does not know. Thus, for the reasons discussed above, the Court should deny class certification.

If the Court denies this motion, however, defendants reserve the right to oppose any future motion for class certification on any ground, including Kalmbach's alleged adequacy. *See Amey v. Cinemark USA Inc.*, No. 13-CV05669WHO, 2014 WL 4417717, at *4 (N.D. Cal. Sept. 5, 2014) (denying motion to deny class certification "without prejudice to defendants re-raising the identical arguments after classwide discovery has been conducted or in opposition to plaintiffs' motion for class certification"); *Leon v. Standard Ins. Co.*, No. 215CV07419ODWJC, 2016 WL 768908, at *4, *7 (C.D. Cal. Jan. 28, 2016) (rejecting motion to deny class certification "without prejudice," and noting that the defendant "may reassert its arguments as appropriate in opposition to Plaintiff's motion for class certification," or, "[a]lternatively, . . . may bring a further motion to deny class certification should Plaintiff fail to affirmatively move for class certification"); *Smith v. Levine Leichtman Capital Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153123, at *7 (N.D. Cal. Mar. 9, 2011) (denying motion to deny class cert "without prejudice"); *Swearingen v. Haas Automation, Inc.*, No. 09CV473 BTM(BLM), 2009 WL 10671769, at *4 (S.D. Cal. Aug. 10, 2009) (same).

//

//

//

//

//

//

DEFENDANTS' MOTION TO DENY    - 14 -    BAKER & HOSTETLER LLP
CLASS CERTIFICATION                      999 Third Avenue, Suite 3600
                                         Seattle, WA 98104-4040
                                         Telephone: (206) 332-1380

DATED this 2nd day of February, 2018.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*s/ James R. Morrison*
Curt Roy Hineline, WSBA #16317
James R. Morrison, WSBA #43043
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Tel: (206) 332-1380
Fax: (206) 624-7317
E-mail: chineline@bakerlaw.com
           jmorrison@bakerlaw.com

Terry M. Brennan (*admitted pro hac vice*)
Michael D. Meuti (*admitted pro hac vice*)
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel: (216) 621-0200
Fax: (216) 696-0740
E-mail: tbrennan@bakerlaw.com
           mmeuti@bakerlaw.com

***Attorneys for Defendants National Rifle Association of America and InfoCision, Inc.***

# CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kim D. Stephens
Chase Christian Alvord
Tousley Brain Stephens PLLC
1700 7th Avenue, Suite 2200
Seattle, WA 98101-4416
Tel: (206) 667-0249
Fax: (206) 682-2992
kstephens@tousley.com
calvord@tousley.com

Steven L. Woodrow
Patrick H. Peluso
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 213-0675
Fax: (303) 927-0809
swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com

Stefan Coleman
Adam T. Savett
Law Offices of Stefan Coleman, P.S.
201 S. Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946
law@stefancoleman.com
adam@stefancoleman.com

**Attorneys for Plaintiff Katharyn Kalmbach**

        *s/ Serita Smith*
        Serita Smith
        Assistant to Curt Roy Hineline and
        James R. Morrison